```
UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
PEARLINE HAMMOND,

                Plaintiff,              MEMORANDUM & ORDER
                                        09-CV-3219(JS)(ARL)
        -against-

ZURICH AMERICAN INSURANCE COMPANY,

                Defendant.
----------------------------------X
APPEARANCES:
For Plaintiff:     Paul J. Margiotta, Esq.
                   The Margiotta Law Firm, P.C.
                   Four West Main Street
                   Bay Shore, NY 11706

For Defendant:     Peter Arnold Walker, Esq.
                   Lori M. Meyers, Esq.
                   Seyfarth Shaw LLP
                   620 8th Avenue
                   New York, NY 10018
```

SEYBERT, District Judge

Plaintiff Pearline Hammond ("Hammond") commenced this action against former employer, Defendant Zurich American Insurance Company ("Zurich") alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and New York State Human Rights Law ("NYSHRL"), as codified in New York Executive Law § 296 et seq., for failure to promote, retaliation, hostile work environment, and termination based on her race, national origin, and age.

Pending before the Court is Plaintiff's second motion to amend her Complaint pursuant to Rule 15(a) and Defendant's

motion to dismiss pursuant to Rule 12(b)(6).  For the reasons set forth herein, Plaintiff's motion to amend is GRANTED.  Furthermore, Defendant's motion to dismiss, as construed against Plaintiff's Second Amended Complaint, is GRANTED in part and DENIED in part.

BACKGROUND[1]

Plaintiff is a fifty-seven year old, self-described "woman of color" and is a native of Jamaica.  (Second Am. Compl. ¶¶ 7-8.)  She was a Senior Claims Specialist for approximately ten or eleven years, four[2] of which were spent at Zurich.  (Id. ¶ 10.)  Plaintiff was employed by Defendant from approximately October 15, 2001 through December 14, 2006.  Although it is unclear, it appears that Plaintiff worked almost exclusively on the Honeywell account.  It is also unclear if any other Senior Claims Specialist worked on the Honeywell account.

In July 2005, management advertised for an MCU Supervisor promotion.  At around the same time, Zurich was notified of "a defense based claim act claim" ("special claim"), a unique and rare claim, on the Honeywell account.  Hammond asserts that handling such a claim would be a very big plus on

---

[1] For purposes of deciding a motion to dismiss, the Court must presume all facts asserted in the Complaint to be true.  Here, the Court reads the Second Amended Complaint in a light most favorable to Plaintiff.

[2] Although Plaintiff states that she worked for Zurich for four years here, she later states that she held a five year tenure with the Defendant. (Second Am. Compl. ¶ 41.)

2

her résumé, and would have helped to assure that she received the MCU promotion. However, at that time, Hammond was unaware that this special claim was on the Honeywell account. (Id. ¶¶ 11-14.)

Shortly thereafter, Hammond overheard her team manager, David Koch ("Koch"), phone an attorney and Zurich's corporate office for more information on how to handle the special claim. Koch then called, Kevin Murphy ("Murphy"), a white male, over to his cubicle, and told Murphy that he would be handling the special claim. Furthermore, after Koch gave Murphy the special claim, he instructed Murphy to write on his résumé "Defense Based Act" representative. Murphy then submitted his résumé for the MCU position, and received the position. (Id. ¶¶ 15-20.)

Hammond contends that Murphy is 20 years younger than her; although she does not specify what the MCU job requirements were, Plaintiff asserts that Murphy did not meet those qualifications, based on years of experience. Furthermore, she alleges that Koch "took" the special claim away from her, but does not make clear why the special claim should have been hers in the first place. (Id. ¶¶ 18-21.)

In or about July 2005, Koch told Hammond that she was denied the MCU promotion. (Id. ¶ 50.) Days later, Hammond and

3

Koch, were called into the office of Joseph Salerno ("Salerno"), the branch manager, to discuss Hammond's allegations of Koch's discriminatory conduct. Plaintiff recounted the story of her conversation with Koch, and claims that Koch did not dispute any of the facts. (Id. ¶¶ 24-26.) No action was taken. Around August or September 2005, Hammond again complained about the perceived discrimination. In response, Koch and Salerno stated that they were not discriminating against her. At this time, Plaintiff claims that Salerno told her that she would get the next promotion. No promotion arose. (Id. ¶¶ 31-32, 35.)

In or around December 2005, Plaintiff claims that she began to be harassed "for work she had always done and policies that she had always followed[,]" but she does not specify the nature of the harassment or the work or policies with which she allegedly complied. She also says that she was disciplined on three occasions for unspecified "common place" conduct; Plaintiff does not plead the nature of the discipline, but maintains that unspecified white employees regularly engaged in this conduct and they were not disciplined. (Id. ¶¶ 33-34.)

On or about March 26, 2006, Hammond received a good performance evaluation. Nine months later, on December 14, 2006, Hammond was terminated for committing a "breach reserve." Although Plaintiff does not dispute that she committed a breach

reserve, she states that, to her knowledge, no other employee in the Workers Compensation Department has ever been terminated for breach reserve. (Id. ¶¶ 38, 41.) Plaintiff states that there are three other Senior Claims Specialists at Zurich, in Hammond's office; Dora Westlake, Lis Chierello, and Fran Manzie, and all three are white females. Additionally, Salerno, Koch, and Murphy are all white males. Plaintiff does not allege that any of these Zurich employees committed a breach reserve.

On August 2, 2007, Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC"). Although Plaintiff does not attach a copy of the charges she filed with the EEOC or specifically describe it in her Second Amended Complaint, she does state that she received a "right to sue" letter, dated April 15, 2009. (Id. ¶¶ 5-6.)

On July 6, 2009, Plaintiff commenced this action in the New York State Supreme Court, Suffolk County, by serving Defendant with a Summons and Verified Complaint. Defendant removed the action to this Court on July 27, 2009, and filed its first motion to dismiss on August 3, 2009. Thereafter, on August 25, 2009, Plaintiff filed an Amended Complaint, asserting twenty-one causes of actions including: (1) failure to promote, (2) hostile work environment, (3) retaliatory discharge, (4) other discrimination based on age, race, and national origin

5

under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. and the NYSHRL as codified in New York Executive Law § 296 et seq., and (5) violations of unspecified corporate policies. Plaintiff seeks $5,000,000 in compensatory damages, punitive damages, and attorney's fees. On September 22, 2009, Defendant filed its current motion to dismiss. Eight days later, Plaintiff filed her motion to file a Second Amended Complaint.

DISCUSSION

I. Plaintiff's Motion to Amend

An in-depth analysis of Rule 15(a) is unnecessary for purposes of deciding this motion. Plaintiff's Proposed Second Amended Complaint has no material differences from the first Amended Complaint, save for the omission of seven meritless causes of action.[3] Because Plaintiff adds virtually nothing in the way of factual allegations or new causes of action, the Second Amended Complaint amounts to nothing more than a voluntary dismissal of those seven claims. Furthermore, as Defendant's motion papers clearly address all of Plaintiff's claims as stated in the Second Amended Complaint, Defendant suffers no prejudice if the Court simply construes its motion to

---

[3] Accordingly, Plaintiff's claims pursuant to New York Civil Rights Law and the Civil Rights Act of 1991 claims are dismissed with prejudice, as being without merit.

6

dismiss as against Plaintiff's Second Amended Complaint. Accordingly, Plaintiff's motion to amend is GRANTED.

II. Standard of Review Under Rule 12(b)(6)

To survive a Rule 12(b)(6) motion, a Plaintiff must plead sufficient factual allegations in the complaint to "state a claim [for] relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The complaint does not need "detailed factual allegations[,]" but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. It must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. In addition, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." Id. Essentially, Federal Rule of Civil Procedure 8(a)(2) only requires the Plaintiff to plead sufficient facts to give the Defendant fair notice of the basis for the claims and the relief that is being sought. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514, 122 S. Ct 992, 999, 152 L. Ed. 2d 1 (2002). Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). However, "[t]hreadbare recitals of the elements

7

of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

Generally the court is confined to "the allegations contained within the four corners of the Complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). However, the court may also look to "any written instrument attached to [the complaint] as an exhibit . . . [,] statements or documents incorporated in it by reference[,]" and any document that the complaint relies heavily upon, which, by its terms and effect, render the document integral to the complaint. Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002). Furthermore, documents or matters where "judicial notice" may be taken may also be looked at by the court. Brass v. Am. Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993).

In rendering a decision on a 12(b)(6) motion, the court should not dismiss the action merely because it thinks that recovery is unlikely or disbelieves the factual allegations in the complaint. See Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974);

Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980) ("[The court must] merely . . . assess the legal feasibility of the complaint, not . . . assay the weight of the evidence which might be offered in support thereof.")

III. Title VII and NYSHRL Disparate Treatment Claims

    A. Scope of the Statutes

It is well settled that Title VII does not prohibit discrimination on the basis of age, but rather applies only to complaints relating to discrimination on the basis of race, color, religion, sex, or national origin. See, e.g., Bornholdt v. Brady, 869 F.2d 57, 62 (2d. Cir. 1989); Ercole v. U.S. Dep't of Transp., No. 07-CV-2049, 2008 WL 4190799, at *6 (E.D.N.Y. Sept. 10, 2008) (allegations of age discrimination do not fall under Title VII). Accordingly, Plaintiff's Title VII claims based on any alleged age discrimination are DISMISSED.

    B. Timeliness

Under Title VII, a discrimination charge must "be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . such charge shall be filed by or on

behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). In New York, the State Division of Human Rights has the "authority" to grant relief from discrimination. See generally Harris v. N.Y.C., 186 F.3d 243, 247 n.2 (2d Cir. 1999). Thus, in ordinary cases, New York discrimination plaintiffs have 300 days after a discriminatory act to file a charge. Id.

The 300-day limitation period begins to run when the plaintiff knows or should know of the occurrence of the alleged discriminatory act. Morse v. Univ. of Vt., 973 F.2d 122, 125 (2d Cir. 1992). The Supreme Court has made it clear that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). "Discrete discriminatory acts" include "termination, failure to promote, denial of transfer, or refusal to hire." Id. at 114.

Claims of discrimination under § 296 of NYSHRL are governed by a three-year statute of limitation. Unlike with claims under Title VII, Plaintiffs seeking relief under § 296

must actually commence an action in court within three years from the date of injury caused by the discrimination. See Cloverleaf Realty of New York, Inc. v. Town of Wawayanda, 572 F.3d 93, 94 (2d Cir. 2009); Russell v. County of Nassau, 696 F. Supp. 2d 213, 230 (E.D.N.Y. 2010); N.Y. C.P.L.R. § 214(2).

In this case, Plaintiff filed her charge with the EEOC on August 2, 2007 and commenced this action on July 6, 2009. Accordingly, Plaintiff's Title VII claims predicated on events that occurred prior to October 6, 2006 are time-barred. Similarly, Plaintiff's § 296 claims based on events prior to July 6, 2006 are time-barred. Plaintiff provides dates for three actions which could be construed as adverse employment actions: (1) Koch's taking of the special claim from her in July 2005; (2) Defendant's failure to promote Plaintiff in or around July 2005; and (3) Plaintiff's termination in December 2006. Thus, all disparate treatment claims under Title VII and NYSHRL for the taking of the special claim and the Defendant's refusal to promote Plaintiff are time-barred. Similarly, any causes of action predicated on Plaintiff's August and September 2005 objections to Defendant's alleged unlawful discrimination are also time-barred.

Despite these obvious limitation problems, Plaintiff argues that her claims are saved by the continuing violation

doctrine. But this argument fails. In Morgan, the Supreme Court narrowly construed the scope of the continuing violation doctrine as applied to disparate treatment claims. 536 U.S. at 113. "Each discrete discriminatory act starts a new clock for filing charges alleging that act[,]" id., and each "'discrete act' . . . must be the subject of a complaint to the EEOC within 300 days." Elmenayer v. ABF Freight Sys. Inc., 318 F.3d 130, 134-35 (2d Cir. 2003). Because each of the aforementioned acts were discrete, the continuing violation doctrine does not apply in this case.

Accordingly, only the following claims survive the aforementioned limitations periods: (1) Title VII and NYSHRL claims for wrongful termination based on Plaintiff's race and national origin; and (2) NYSHRL claim for wrongful termination based on Plaintiff's age. The Court will examine each in turn below.

### C. Plaintiff's Required Showing

To establish a prima facie case of discrimination based on race or national origin under Title VII and NYSHRL, a plaintiff must show (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of

discrimination. Holcomb v. Iona College., 521 F.3d 130, 138 (2d Cir. 2008); Cruz v. Coach Stores, Inc., 202 F.3d 560, 567 (2d Cir. 2000). This same standard applies in age discrimination cases under NYSHRL. See Tomassi v. Insignia Fin. Group, Inc., 478 F.3d 111, 115 n. 3 (2d Cir. 2007); Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001), cert. denied, 534 U.S. 993, 122 S. Ct. 460, 151 L. Ed. 2d 378 (2001).

To prevail on a disparate treatment claim, Plaintiff must allege that there were similarly situated employees who were treated less favorably than Plaintiff. See, e.g., Beauchat v. Mineta, No. 06-CV-5325, 2007 WL 4462387, at *2 (2d Cir. Dec. 19, 2007) (affirming district court's dismissal of plaintiff's Title VII claim where the plaintiff failed to show that "other individuals identified for purposes of comparison were similarly situated in all material respects.") (internal citations and quotations omitted); see also Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000) ("When considering whether a plaintiff has raised an inference of discrimination by showing that she was subjected to disparate treatment, we have said that the plaintiff must show she was 'similarly situated in all material respects' to the individuals with whom she seeks to compare herself.") (quoting Shumway v. UPS, 118 F.3d 60, 64 (2d Cir. 1997)).

1. National Origin

Other than a single sentence indicating that she hails from Jamaica, Plaintiff's Second Amended Complaint woefully fails to plead national origin discrimination. Plaintiff cannot establish that her national origin was a basis for her termination, nor does she plead allegations relating to the national origins of any of her coworkers. Accordingly, her claims based on her national origin are DISMISSED.

2. Race

In support of her claims of race-based discrimination under Title VII and NYSHRL, Plaintiff states as follows: (1) she was the only non-white Senior Claims Specialist; (2) she was terminated for breach reserve; and (3) other employees who were white and who also committed breach reserve were not terminated.

Although Plaintiff may not ultimately prevail on this claim at summary judgment or trial, she has met her burden for purposes of surviving Defendant's Rule 12(b)(6) motion. Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiff's Title VII and NYSHRL claims with regard to her termination.

3. <u>Age</u>

As stated above, Plaintiff's claims with regard to her promotion are time-barred. Therefore, her only remaining claims relate to her termination. Based on the allegations in the Second Amended Complaint, Plaintiff has altogether failed to satisfy her burden; Plaintiff provides no information regarding the ages of her allegedly terminated co-workers who committed breach reserve. Accordingly, Plaintiff's NYSHRL claims based on age discrimination are DISMISSED.

IV. <u>Plaintiff's Hostile Work Environment Claims</u>

Claims predicated on a hostile work environment may be brought under Title VII and NYSHRL. As with disparate treatment claims under the federal and state statutes, courts apply the same analysis in examining these claims. <u>See, e.g.</u>, <u>Miller Brewing Co. v. St. Div. of Human Rights</u>, 66 N.Y.2d 937, 498 N.Y.S.2d 776, 489 N.E.2d 745 (1985); therefore, the Court will simultaneously analyze Plaintiff's hostile work environment claims.

A nasty, unpleasant workplace is not a hostile work environment for purposes of NYSHRL and Title VII. Rather, Title VII and NYSHRL protect employees from hostile working conditions that are created because of the individual's membership in a protected class. See <u>Krasner v. HSH Nordbank A.G.</u>, 680 F. Supp.

2d 502, 513 (S.D.N.Y. 2010). Hostile work environment claims arise, "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the condition of the victim's employment and create an abusive working environment . . . ." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993).

In deciding whether the environment may be considered sufficiently hostile to support a hostile work environment claim, a court must consider the totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether such conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's work performance. See Harris, 510 U.S. at 23. "Mere utterance of an [] epithet which engenders offensive feelings in an employee would not affect the conditions of employment to [a] sufficiently significant degree to violate Title VII." See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986). And isolated incidents, unless extremely severe or serious, will not amount to discriminatory changes in the terms and conditions of employment." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (internal quotations

16

marks and citations omitted). In order for "comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of . . . enmity." Richardson v. N.Y. State Dep't of Correctional Serv., 180 F.3d 426, 437 (2d Cir. 1999).

In this case, Plaintiff fails to plead even a single fact that could give rise to a hostile work environment because of her age, race, or national origin. Accordingly, these claims are DISMISSED.

IV. Violation of Corporate Policies

Plaintiff alleges "on information and belief" that she was subjected to a hostile work environment, and discrimination because of her race, national origin and age in violation of unidentified corporate policies. (Second Amend. Compl. ¶¶ 105-17, 143-48.) However, Plaintiff has failed to identify the policies allegedly violated, or any section thereof.

Under New York law, a breach of contract claim requires (1) the existence of a contract, (2) plaintiff's performance on the contract, (3) defendant's breach of the contract and (4) resulting damages. See Zaltz v. Wells Fargo Home Mortgage, No. 08-CV-11225, 2010 WL 3026536, at *5 (S.D.N.Y. Aug. 2, 2010) (citation omitted). To state a cause of action for breach of an at-will employment contract, a plaintiff must

17

point to an "express agreement" by defendant to limit its unfettered right to terminate its employees. Id. (citing Fiammetta v. St. Francis Hosp., 168 A.D.2d 556, 557, 562 N.Y.S.2d 777, 778 (App. Div. 1990) ("Courts will not infer a contractual limitation on the employer's right to terminate at-will employment absent an 'express agreement' to that effect which was relied upon by the employee." (internal citation omitted)). "When reviewing a breach of contract claim, '[t]he task of the court is to enforce the plain meaning of an unambiguous agreement . . . .'" Id. (citing Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc., 323 F. Supp. 2d 525, 539 (S.D.N.Y. 2004).

In this case, Plaintiff fails to plead that Defendant violated any specific policy or provision of her employment agreement. Rather, in an impermissible attempt to masquerade her discrimination claims as breach of contract claims, she makes blanket assertions about Defendant's policy violations. Such assertions are without merit. Accordingly, Defendant's motion to dismiss Plaintiff's breach of contract claims is GRANTED.

## CONCLUSION

For the reasons stated above, Plaintiff's motion to amend is GRANTED. Defendant's motion to dismiss is GRANTED in

18

part and DENIED in part.  Only Plaintiff's Title VII and NYSHRL claims based on her allegedly race-based wrongful termination can continue forward.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:  August  12 , 2010
        Central Islip, New York